1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA EVE CASTRO,<br><br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **Case No.:** 3:19-cv-00749-BEN<br>3:17-cr-00414-BEN-1<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**<br><br>**[ECF No. 1]** |

## I.    INTRODUCTION

Before the Court is Petitioner Christina Eva Castro's ("Movant" or "Petitioner") motion, *pro se*[1], pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence of 120 months' imprisonment and five years of supervised release, resulting from her felony conviction for Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960.   CV ECF No.[2] 1; ECF No. 49.   Respondent United States of America

---

[1]    In reviewing Petitioner's motion, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed … and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

[2]    All docket citations refer to the criminal case docket, Case No. 3:17-cr-00414-BEN-1.  Any docket citations in this civil case will be referred to as "CV ECF No."

("Respondent" or the "Government") opposes.  ECF No. 43.

After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES** Petitioner's Motion.

## II.   BACKGROUND

### A.   Statement of Facts

On November 20, 2016, Petitioner, a United States citizen, entered the United States from Mexico at the San Ysidro, California, Port of Entry, as the driver of a Nissan Rogue, with her six year old daughter as the passenger.  ECF No. 32 at 4; *see also* ECF No. 42 at 1.  The vehicle was registered to Mark Mendoza, who Petitioner's daughter advised was Petitioner's boyfriend.  ECF No. 32 at 4.  During a pre-primary inspection, a canine alerted to the floor of the vehicle.  *Id.*  Petitioner stated she was traveling home to Fresno, California, after visiting her uncles in Mexico.  *Id.*  The vehicle was referred to secondary for further inspection.  *Id.*

Agents recovered a total of 26 packages concealed under the interior bottom floor of the carpet, which Drug Enforcement Administration laboratory analysis confirmed was 11.48 kilograms of methamphetamine (actual).  ECF No. 32 at 4.  Petitioner was arrested and declined to provide any statements without an attorney present.  *Id.*  Petitioner's daughter was turned over to Child Protective Services in San Diego, California.  *Id.*

The case agent indicated that Petitioner had several crossings into Mexico during November 2016, noted the long distance of travel between the Fresno area and Mexico, and added that the text messages recovered from her telephone indicated Petitioner might have been selling small amounts of narcotics and had knowledge of crossing narcotics during the offense.  ECF No. 32 at 5.

### B.   Procedural History

On February 16, 2017, the Government filed a one-count indictment charging Petitioner with violation of 21 U.S.C. §§ 952 and 960, Importation of Methamphetamine. ECF No. 1.   The grand jury indictment charged Petitioner with knowingly and intentionally importing approximately 32.80 pounds "of a mixture and substance

containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952 and 960." ECF No. 1 at 1.

On April 16, 2018, Petitioner entered into a plea agreement with the Government, in which she waived "all rights to appeal and to collaterally attack every aspect of the conviction and sentence." ECF No. 29 at 9. However, the plea agreement contained exceptions, which allowed her to appeal (1) "a custodial sentence above the greater of 71 months or the mandatory minimum term, if applicable" or (2) "the conviction or sentence on the basis that defendant received ineffective assistance of counsel." *Id.* at 9-10. That same day, April 16, 2018, Petitioner entered her guilty plea before the Hon. Karen Crawford. ECF No. 52. Also on that same day, Judge Crawford issued a findings and recommendation to accept Petitioner's guilty plea. ECF No. 30. After no objections were filed, the Court accepted the Findings and Recommendation of the Magistrate Judge and accepted Petitioner's guilty plea. ECF No. 33.

On September 7, 2018, this Court sentenced Petitioner to 120 months in prison. ECF No. 51 at 4:19-25. As part of Petitioner's plea agreement, the parties agreed to jointly recommend Petitioner's sentencing be based on the following U.S. Sentencing Guidelines Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

1. Base Offense Level [USSG § 2D1.1]                              38*
2. Importation of Methamphetamine [USSG § 2D1.1(b)(5)]     +2
3. Acceptance of Responsibility [USSG § 3E1.1]                    -3

ECF No. 29 at p. 7. At sentencing, the Government complied with the plea agreement by recommending the above Guideline calculations. ECF No. 51 at 2:15-21.

On April 22, 2019, Petitioner filed the instant Motion to Reduce her Sentence. ECF No. 49 at 13. Petitioner seeks to vacate or correct her sentence on the grounds of ineffective assistance of counsel. *See generally* ECF No. 49. On June 7, 2019, this Court issued an Order setting a briefing schedule, ordering (1) the Government to respond by July 19, 2019 and (2) Petitioner to file any reply brief by August 30, 2019. ECF No. 50. On July 22,

2019, the Government filed an opposition.  ECF No. 53.  Petitioner did not file a reply brief.

On August 7, 2019, the Court issued an Order requiring Petitioner to respond in writing as to whether she desires to (1) pursue her habeas petition, and as a result, waive attorney-client privilege or (2) abandon her petition in order to avoid the waiver of attorney-client privilege.  ECF No. 54 at 1.  The Court further ordered that if Petitioner failed to respond by August 22, 2019, the attorney-client privilege as to all communications between Petitioner and her attorney, Nicholas DePento ("Mr. DePento"), would be deemed waived.  *Id.*  Petitioner did not file a response, and as such, waived attorney-client privilege. *Id.*  Accordingly, on September 26, 2019, the Government filed a Supplemental Response in Opposition to Petitioner's Motion.  ECF No. 55.  This response attached a declaration from Mr. DePento.

In Mr. DePento's declaration,[3] he states, under penalty of perjury, that as part of his representation, he: (1) "reviewed all of the evidence provided by the United States and from her former lawyer in discovery so that [he] . . . could properly evaluate the merits of the case and determine whether any motions should be filed," ECF No. 55-1 at 2, ¶ 5; (2) "did not identify any motions that could be filed related *to* the evidence, including any motions *to* suppress or otherwise exclude any of the evidence," despite reviewing all of the evidence, *id.* at 2, ¶ 6; (3) "reviewed all of the evidence with her prior *to* her decision *to*

---

[3]    The Court notes that not only did Petitioner waive attorney-client privilege by failing to respond to the Court with respect to this issue by the Court-ordered deadline, *see* Order, ECF No. 54, but by virtue of basing her motion on the grounds of ineffective assistance of counsel, she waived attorney-client privilege between Mr. DePento and herself as a matter of law.  *See, e.g.*, *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) (providing that "where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer"); *Alvarez v. Woodford*, 81 F. App'x 119, 120 (9th Cir. 2003) (providing that "[a] habeas petitioner cannot raise a claim of ineffectiveness against his trial counsel while at the same time asserting that documents relevant to that claim are protected by the attorney-client privilege").

-4-

plead guilty in this case by reading and reviewing all of the reports that pertained to her and her activities," ECF No. 55-1 at 2, ¶ 7; (4) arranged a meeting on April 10, 2018 between Petitioner, himself, and counsel for the Government and agents, "so that counsel for the United States could review the evidence with Ms. Castro," *id.* at 2, ¶ 8; (5) "negotiated a plea agreement with counsel for the United States that required the United States to recommend a sentence of 120 months' custody in exchange for Ms. Castro's guilty plea and agreement to waive her right to appeal or collaterally attack the conviction, except under certain limited circumstances," *id.* at 3, ¶ 11; (6) "discussed all of Ms. Castro's options" with her, explaining "that she could go to trial, plead guilty without a plea agreement or plead guilty with a plea agreement," *id.* at 3, ¶ 12; (7) discussed with Petitioner that if she signed the plea agreement, "she would be waiving her right to appeal or collaterally attack the conviction or the sentence in exchange for a more favorable sentencing recommendation from the United States," *id.* at 3, ¶ 13; (8) explained to Petitioner "that she would only be permitted to appeal or collaterally attack the conviction and/or her sentence if the Court sentenced her above the statutory mandatory minimum term (120 months' custody) or the basis of her challenge was ineffective assistance of counsel," *id.* at 3, ¶ 13; (9) witnessed Petitioner confirm to him that "she understood and was in complete agreement with waiving her appeal and collateral attack rights in exchange for a lower sentencing recommendation from the United States," *id.* at 3, ¶ 13; (10) "did not tell her that signing the plea agreement was her only option and that no other choice was available to her," but instead, "explained to her that ultimately the decision of whether to plead guilty or go to trial was hers and that [he] . . . would represent her regardless of her decision," *id.* at 4, ¶ 15; (11) was never advised by Petitioner that she wished for him to file a notice of appeal, *id.* at 4, ¶ 17; and (12) would have initially advised against an appeal if Petitioner had asked him for one because it would likely be barred by the waiver provisions in the plea agreement and might be considered a breach of the agreement, but nevertheless, would have filed one on her behalf in a timely manner if she had persisted in her request, *id.* at 4, ¶ 18.

3:19-cv-00749-BEN

III.   **LEGAL STANDARD**

"A motion to attack a prison sentence made under section 2255 is a federal prisoner's substitute for a petition for a writ of habeas corpus."  Josephine R. Potuto, *The Federal Prisoner Collateral Attack: Requiescat in Pace*, 1988 B.Y.U. L. Rev. 37, 37 (1988).  Under section 2255, a movant is entitled to relief if the sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was given by a court without jurisdiction to do so; (3) was in excess of the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Speelman*, 431 F.3d 1226, 1230 n.2 (9th Cir. 2005).

If it is clear the movant has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing.  *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (providing that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing").  Courts may deny a hearing where "the petitioner's allegations, viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal."  *United States v. McMullen*, 98 F.3d 1155, 1158–59 (9th Cir. 1996) (rejecting the appellant's contention that the district court erred by denying the appellant an evidentiary hearing on his ineffective assistance of counsel claim because the appellant failed to allege specific facts entitling him to relief) (internal quotations and citations omitted).  The right to a hearing is earned by alleging "specific facts which, if true, would entitle him [or her] to relief."  *Id.*

The Ninth Circuit has "consistently held that a § 2255 petitioner cannot challenge nonconstitutional sentencing errors if such errors were not challenged in an earlier proceeding."  *See, e.g.*, *McMullen*, 98 F.3d at 1157 (holding that the because the appellant "failed to raise any objection regarding the type of methamphetamine, either at sentencing or on direct appeal, he is barred from raising this issue in a § 2255 motion," and "the

-6-

district court properly denied his motion to vacate his sentence on this ground"). Thus, "Petitioners waive the right to object in collateral proceedings unless they make a proper objection before the district court or in a direct appeal from the sentencing decision." *Id.*

## IV.   DISCUSSION

Movant argues that her plea should be vacated under 28 U.S.C. § 2255 because her counsel provided ineffective assistance to her in violation of her Sixth Amendment rights. CV ECF No. 1. The Government responds that Petitioner's Motion should be denied because (1) Petitioner waiver her right to collaterally attack her sentence, ECF No. 53 at 9:24, (2) Petitioner's claims are procedurally defaulted, *id.* at 12:7, (3) Petitioner fails to provide facts to support her claims of ineffective assistance of counsel, *id.* at 15:1, and (4) Petitioner's claims are belied by the facts in the record, *id.* at 15:7. Although the Court disagrees that Petitioner waived her right to collaterally attack her sentence given her waiver contained an exception for an attack based on ineffective assistance of counsel, the Court agrees with the remainder of the Government's Motion.   Accordingly, Petitioner's Motion is **DENIED**.   As outlined below, although Petitioner's claims are timely and the waiver in her plea agreement contained an exception for claims of ineffective assistance of counsel, most of Petitioner's claims are barred due to procedural default. Further, Petitioner has not set forth cause or prejudice sufficient to overcome her procedural default because her claims of ineffective assistance of counsel not only lack credibility but are belied by the record in this case.

### A.   Petitioner's Claims Are Timely

A motion to vacate must be filed within one year from the date the conviction becomes final. 28 U.S.C. § 2255(f) (providing that "[a] 1-year period of limitation shall apply to a motion under this section," which will run from, *inter alia*, the date on which "the judgment of conviction becomes final"). A conviction becomes final once the deadline for filing the notice of appeal has expired. *United States v. Gilbert*, 807 F.3d 1197, 1199 (9th Cir. 2015) (noting that the sentence "became a final judgment for habeas purposes once the deadline for filing the notice of appeal expired 14 days later"); *see also*

FED. R. APP. P. 4(b)(1)(A) (providing that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of . . . the entry of judgment").

Here, Petitioner did not file a notice of appeal.  CV ECF No. 1 at 3.  Thus, Petitioner's conviction became final on October 3, 2018, or fourteen (14) days after entry of the judgment on September 19, 2018.  ECF No. 45.  Accordingly, the statute of limitations period for Petitioner to file a motion to vacate under 28 U.S.C. § 2255 ended October 3, 2019.

On April 22, 2019, Movant filed the instant Motion to Reduce her Sentence.  ECF No. 49 at 13.  As a result, because she filed before the October 3, 2019 deadline, her Motion is not time-barred.  However, Petitioner's failure to appeal raises a related issue of whether her Motion is barred by procedural default.

**B.**     **All But One of Petitioner's Claims Are Barred Due to Procedural Default**

The Government claims that "Castro's habeas petition is . . . barred because she failed to raise any claim on direct appeal."  ECF No. 54 at 12:8-9.  Petitioner neither addressed this issue in her original Motion nor addressed it in a reply brief.

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006).  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either [1] 'cause' and actual 'prejudice,' or that [2] he is 'actually innocent.'"  *Bousley v. United States,* 523 U.S. 614, 622 (1998) (internal citations omitted); *see also Sanchez-Llamas*, 548 U.S. at 350-51 (same); *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (holding that "[a] § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default").  Here, Petitioner's Motion makes no claims of actual innocence, which would contradict the record in this case, including her guilty plea.  *See* CV ECF No. 1.  As such, Petitioner must make a showing of cause and actual

prejudice to overcome her procedural default.

"Constitutionally ineffective assistance of counsel constitutes cause sufficient to excuse a procedural default." *Ratigan*, 351 F.3d at 964–65; *see also* Potuto, B.Y.U. L. Rev. 37 (providing that "[t]he Supreme Court so far has recognized only two claims for cause sufficient to permit collateral review despite a default: (1) ineffective assistance of counsel, and (2) an objective factor 'external to the defense' that produced the default"). Thus, in order to excuse her procedural default, a petitioner "must show that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Ratigan*, 351 F.3d at 965 (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). In *Ratigan*, the petitioner argued his counsel's performance was deficient because he failed to object to certain issues, namely, the insufficiency of proof offered by the government. *Id.* at 965. Nonetheless, the Court did not find this potential failing on the defense counsel's part to warrant overcoming the procedural default: "His counsel's failure to recognize every possible legal argument, including the arguably insufficient proof offered by the government as to one element of the crime, does not, however, constitute cause." *Id.* Rather, "the mere fact that counsel failed to recognize the factual or legal basis for the claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* (citing *Cockett v. Ray,* 333 F.3d 938, 943 (9th Cir. 2003)). Thus, the *Ratigan* court concluded that the alleged errors were not so serious as to deprive the appellant of a fair trial, and as a result, the ineffective assistance claim was not supported by the record. *Id.* at 965. Accordingly, the appellant "failed to show that he should be excused from his procedural default." *Id.* at 965. Similarly, in *United States v. McMullen*, the Ninth Circuit held that the because the appellant "failed to raise any objection regarding the type of methamphetamine, either at sentencing or on direct appeal, he [was] . . . barred from raising this issue in a § 2255 motion." 98 F.3d at 1157. As a result, the Ninth Circuit held that "the district court properly denied his motion to vacate his sentence on this ground." *Id.*

Here, just like the petitioners in *Ratigan* and *McMullen*, who also tried to raise

ineffective assistance of counsel claims through a 2255 motion without having raised the claim on a direct appeal first, Petitioner did not file a notice of appeal.  CV ECF No. 1 at 3.  Thus, Petitioner's Motion, like the motions in *Ratigan* and *McMullen*, must be denied unless she can create a showing of cause or prejudice.  However, for the reasons outlined below, the Court finds that Petitioner has made no such showing.  As a result, all of her claims, other than her second claim that her attorney failed to show her all of the discovery so she could make a meaningful decision as to whether to enter into her plea agreement, have fallen victim to the bar of procedural default.  *See, e.g. Washington v. Lampert*, 422 F.3d 864, 870 (9th Cir. 2005) (holding that "in the context of § 2255 challenges brought by federal prisoners, that waivers cannot bar IAC claims associated with the negotiation of plea agreements").  However, as analyzed below, Petitioner, nonetheless, fails to establish ineffective assistance of counsel as to that claim as well.

### C.    Petitioner's Claims Have Not Been Waived Under the Plea Agreement

The Government argues that Petitioner's "habeas petition should be dismissed because, with the advice and consent of her attorney, she knowingly and voluntarily waived her right to collaterally attack her conviction and sentence."  ECF No. 53 at 9:25-27.

"A defendant's waiver of his rights to appeal and to bring a collateral attack is generally enforced if '(1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made.'"  *Davies v. Benov*, 856 F.3d 1243, 1246-47 (9th Cir. 2017).  "Claims that the plea or waiver itself was involuntary or that ineffective assistance of counsel rendered the plea or waiver involuntary, however, may not be waived."  *Id.* at 1247.

On the one hand, the Court agrees that to the extent Petitioner attempts to collaterally attack her conviction or sentence, she waived her right to do so.  *See United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) (providing that "if it is not a due process violation for a defendant to waive constitutional rights as part of a plea bargain, then a defendant's waiver of a nonconstitutional right, such as the statutory right to appeal a sentence, is also waivable"); *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997)

-10-

("[P]lea agreements are contractual in nature and are measured by contract law standards") (internal quotations omitted). In the written plea agreement, Petitioner "waive[d], to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, including any restitution order." ECF No. 29 at 9-10. Further, Petitioner confirmed this agreement with the Court during the plea colloquy and at sentencing. Plea Colloquy, ECF No. 52 at 7:17-23; Sentencing Hearing, ECF No. 51 at 8:9-11. On the other hand, Petitioner's Plea Agreement carved out an exception to allow Petitioner to seek to vacate, correct, or reduce her to appeal (1) "a custodial sentence above the greater of 71 months or the mandatory minimum term, if applicable" or (2) "the conviction or sentence on the basis that defendant received ineffective assistance of counsel." ECF No. 29 at 9-10. Here, the greater of 71 months or the mandatory minimum term, is the mandatory minimum term, which is 120 months. Thus, because Petitioner's sentence does not exceed the mandatory minimum, she is barred from collaterally attacking the sentence under the first exception. This leaves only one basis to attack her sentence: ineffective assistance of counsel. Consequently, a claim of ineffective assistance of counsel was preserved for collateral attack. The Government argues that the Court should summarily dismiss Petitioner's claims of ineffective assistance of counsel because Petitioner "acknowledged that before she initially each page and signed the plea agreement she went over all the terms of the plea agreement with her counsel," and therefore, could not have had ineffective assistance of counsel. ECF No. 53 at 11:6-8. Although the Court finds this argument persuasive, it also believes that because Petitioner raised a constitutional claim arising under the Sixth Amendment, the Court is obligated to review that claim.

### D.    Petitioner Has Not Established Ineffective Assistance of Counsel

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions." *Missouri v. Frye*, 566 U.S. 134, 138 (2012). That "right to counsel is the right to effective assistance of counsel," *Missouri*, 566 at 138 (citing *Strickland v. Washington,* 466 U.S. 668, 686 (1984)), and applies to all critical stages of criminal

proceedings, including "the consideration of plea offers." *Missouri*, 566 U.S. at 138.

The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *see also Missouri*, 566 U.S. at 138 (same). Under this test, "a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was ineffective." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004) (quoting *Hill*, 474 U.S. at 56–57); *see also Tollett v. Henderson*, 411 U.S. 258, 266 (1973) (providing that "after a criminal defendant pleads guilty, on the advice of counsel, he is not automatically entitled to federal collateral relief"; rather, "[t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity"). Thus, in a claim of ineffective assistance of counsel arising out of a defendant's guilty plea, the defendant must meet the *Strickland* test by showing that (1) under an objective standard, "counsel's assistance was not within the range of competence demanded of counsel in criminal cases" and (2) the defendant suffered actual prejudice because of this incompetence. *Lambert*, 393 F.3d at 979–80; *Lockhart*, 474 U.S. at 57–58. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

With respect to the first factor, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. This involves proving "that counsel's performance was deficient," by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Iaea v. Sunnn*, 800 F.2d 861, 864 (9th Cir. 1986) (citing *Strickland*). Accordingly, courts review claims of ineffective assistance of counsel under a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

-12-

*Staten v. Davis*, 962 F.3d 487, 495 (9th Cir. 2020); *see also Strickland*, 466 U.S. at 689 (providing that "[j]udicial scrutiny of counsel's performance must be highly deferential"). The Court should not view counsel's actions through "the distorting lens of hindsight." *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995) (quoting *Deutscher v. Whitley*, 884 F.2d 1152, 1159 (9th Cir. 1989)), *vacated on other grounds by Angelone v. Deutscher*, 500 U.S. 901 (1991).

As to the second factor, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58–59. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland*, 466 U.S. at 691-92. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Then, the court must evaluate "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

While the Court would normally analyze a claim of ineffective assistance of counsel under the two-pronged test set forth by the *Strickland* court, Petitioner made no specific claims of prejudice. Instead, Petitioner claimed general ineffective assistance of counsel arising out of her allegations that Mr. DePento failed to (1) perform an essential duty by securing a better sentencing outcome for her, ECF No. 49 at 5, (2) provide her with discovery so she could evaluate whether to proceed to trial, *id.* at 6, (3) failed to object to or suppress evidence presented by the Government, which had he done so, could have changed the result of Petitioner's case, *id.* at 8, and (4) advise Petitioner of her rights to an appeal, *id.* at 9. The Government responds that the Court should deny Petitioner's Motion because Petitioner (1) fails to identify what essential duty her counsel failed to perform, (2) was specifically advised of her right to go to trial, (3) fails to identify what piece of evidence, if any, she believes her counsel should have moved to suppress, and (4) agreed

-13-

to waive her right to an appeal in exchange for the plea agreement.  ECF No. 53 at 2:9-14.

In *Hill*, the defendant alleged that his counsel had provided inadequate advice regarding his guilty plea, including information regarding parole eligibility.  *Hill*, 474 U.S. at 60.  However, the Supreme Court noted that "Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial."  *Hill*, 474 U.S. at 60.  Similar to the *Hill* defendant that failed to allege that had his counsel informed him of a certain fact, it would have changed his decision to enter a guilty plea, Petitioner does not allege that she would have proceeded to trial instead of pleading guilty had Mr. DePento (1) presented her with some identifiable piece of evidence, (2) filed a motion to suppress some identifiable piece of evidence that would have been appropriate for exclusion under the law, and (3) informed her that she was waiving her right to appeal.  In fact, Petitioner could have appealed the sentence here but failed to do so.  Further, the record indicates she was informed numerous times that she had a right to appeal and was waiving that right as part of her plea agreement.  As a result, just as the Supreme Court determined that the *Hill* defendant's claims of ineffective assistance counsel failed, the Court finds that Petitioner's claims fail for the same reasons.  As set forth below, the record contradicts each of Petitioner's claims of ineffective assistance of counsel.

### 1.  *Alleged Failure to Perform an Essential Duty (Secure a Favorable Adjustment)*

Petitioner argues that Mr. DePento failed to perform an essential duty, citing to *Strickland v. Washington*.  ECF No. 49 at 5.  She elaborates that "[w]here there is a reasonable probability that Counsel's unprofessional omissions [1] deprived a criminal defendant of a substantive or procedural rigth [sic] or . . . a favorable downward adjustment or departure" or "[2] failed to prevent an improper upward adjustment, in the defendant's sentencing under the Sentencing Guidelines, relevant statues, or Constitution, the defendant's sentence is violative of the Sixth Amendment Constitutional right to 'Effective Assistance of Counsel.'"  *Id.* at 5 (citing *United States v. Acklen*, 47 F.3d 739, 742-744 (5th

-14-

Cir 1995)).  As the Government correctly points out, although Petitioner alleges that Mr. DePento failed to perform some essential duty, she simultaneously "fails to set forth what essential duty that was." ECF No. 53 at 2:2-3.  The implication from the following sentence is that some facet of Mr. DePento's behavior "deprived her of a favorable adjustment."

Petitioner appears to argue that Mr. DePento's ineffective assistance of counsel resulted in a less favorable sentencing outcome for her.  During the Plea Colloquy, however, the Government informed Petitioner that the maximum penalties for her crime were "life in prison and a mandatory minimum of ten years in prison, a maximum 10-million-dollar fine, a mandatory special assessment of $100 per count, a term of supervised release of at least five years and up to life, and possible ineligibility for certain federal benefits." Plea Colloquy, ECF No. 52 at 5:8-15.  Petitioner confirmed that she understood the range of maximum penalties which could be imposed on her.  *Id.* at 5:16-19.  Later, at the Sentencing Hearing, the Court reviewed the Sentencing Guidelines with Petitioner, Sentencing Hearing, ECF No. 51 at 4:15-19, reminding Petitioner that she had been "looking at a guideline of 262 months to 327 months," *id.* at 51 at 2:22-25.  However, the Court noted that Mr. DePento did "an outstanding job [in negotiating the plea]," *id.* at 2:22-25, and advised that "I don't know that I would have gone much below 120 no matter what" because "she does have [a] considerable prior criminal history," *id.* at 3:8-10.

Defendant also confirmed on multiple occasions that she had a full opportunity to discuss the case and consequences of the plea.  Plea Agreement, ECF No. 29 at 5:7-15 (providing that "Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel, and has a clear understanding of the charges and the consequences of this plea"); Plea Colloquy, ECF No. 52 at 4:24-5:5 (Petitioner confirmed she understood when directly asked if she understood that if her case proceeded to trial, the Government would have been required to prove the elements of her crime beyond a reasonable doubt, and because she is pleading guilty, the Government did not need to do so); Sentencing Hearing, ECF No. 51 at 8:6-11 (Mr. DePento responded, "Yes," on Petitioner's behalf when the Court asked Petitioner directly, "Do you

-15-

acknowledge you waived your right to appeal and collaterally attack").

The plea agreement itself appears to be signed by Petitioner on April 10, 2018, ECF No. 55-1 at 12, and Petitioner also confirmed she signed it at the Plea Colloquy, ECF No. 52 at 7:9-10.  The plea agreement also states that "[b]y signing this agreement, defendant certifies that defendant has read it (or that it has been read to defendant in defendant's native language)" and "has discussed the terms of this agreement with Defense counsel and fully understands its meaning and effect."  ECF No. 55-1 at 11:1-6.  Thus, Petitioner cannot credibly claim that her plea was not voluntary or that she was unaware she was waiving her right to appeal as part of her plea agreement.[4]  Petitioner was also asked whether anyone threatened her to plead guilty and confirmed that no one had.  Plea Colloquy, ECF No. 52 at 8:6-8.  She was also asked whether anyone promised her anything other than what was set forth in the plea agreement in exchange for her plea, and she confirmed that no one had.  *Id.* at 8:9-13.  Thus, the magistrate judge found "that the defendant's plea is made knowingly and voluntarily with a full understanding of the nature of the charge, [her] . . . rights, and the consequences of [her] . . . plea and that there is a factual basis for [her] . . . plea."  ECF No. 52 at 9:24-10:4.  Defendant further confirmed before the Magistrate Judge, under penalty of perjury, that she was satisfied with Mr. DePento's representation.  *Id.* at 8:3-5 (Petitioner was asked directly by Magistrate Judge Crawford, "Are you satisfied with the services that your lawyer has provided to you," and responded with a clear, "Yes").  As a result, ample evidence in the record confirms Petitioner's plea was voluntarily and

---

[4]      Courts interpret plea agreements using ordinary rules of contract interpretation.  *See, e.g.*, *United States v. Medina-Carrasco*, 815 F.3d 457, 462 (9th Cir. 2016) (providing that "[f]or the most part, we interpret plea agreements using the ordinary rules of contract interpretation") (quoting *United States v. Cope*, 527 F.3d 944, 949–50 (9th Cir. 2008)).  As a result, a party may not avoid the consequences of his or her plea agreement by claiming he or she did not read the entire agreement.  *See, e.g.*, *Oregon-Pac. Forest Prod. Corp. v. Welsh Panel Co.*, 248 F. Supp. 903, 908 (D. Or. 1965) (providing that "[i]t is no defense that a party, seeking to avoid the contract, did not read it"); *Conyer v. Hula Media Servs., LLC*, 53 Cal. App. 5th 1189, 1197 (2020), *review filed* (Oct. 5, 2020) (noting that "[i]t has long been the rule in California that a party is bound by a contract even if he did not read the contract before signing it").

-16-

intelligently made.

Further, the Government notes that Mr. DePento "brokered a deal with the United States, which benefitted Castro significantly" by securing the Government's recommendation of a 120 month sentence, the mandatory minimum for the offence with which Petitioner was charged, "despite the fact that Castro's sentencing guideline range was 324 to 405 months." ECF No. 53 at 4:10-15; *see also* ECF No. 55-1 at 3, ¶ 11 (providing that "[a] recommendation of 120 months' custody from the United States amounted to a downward departure of over 200 months from Ms. Castro's sentencing guideline range of 324 to 405 months based on her significant criminal history"). Thus, "because of the Plea agreement, Castro received a sentencing recommendation from the United States that was over 200 months lower than the low-end of her guideline range." ECF No. 53 at 4:16-19. Mr. DePento also stated at the Sentencing Hearing that he "tried everything possible to try to get below the guideline levels." Sentencing Hearing, ECF No. 51 at 2:19-21. The Court responded by commending Mr. DePento's representation of Petitioner. *Id.* at 2:22-25.

The Court agrees that Mr. DePento helped Petitioner secure a favorable adjustment. The grand jury indictment charged Petitioner with knowingly and intentionally importing approximately 32.80 pounds of methamphetamine. ECF No. 1 at 1. Because Petitioner was charged with importing greater than 4.5 kilograms of methamphetamine under 21 U.S.C. §§ 952 and 960, she had a base offense level of 38. U.S. SENT'G GUIDELINES MANUAL § 2D1.1. An offense level of 38 ranges from 235[5] to life in prison, depending on a defendant's criminal history. U.S. SENT'G GUIDELINES MANUAL, SENTENCING TABLE.

---

[5] The record indicates the parties did not agree as to Petitioner's criminal history. ECF No. 42 at 2:11. Although the parties did not agree on criminal history, the record also indicates that Petitioner does have a criminal history, ECF No. 51 at 3:9, and if she had proceeded to trial, this may have factored into the Court's sentence and increased it further. However, because there was no agreement as to criminal history, the Court's analysis operates under the assumption that Petitioner would have been given the benefit of the doubt and fallen under Criminal History Category I, which carries the lowest sentence.

-17-

However, her offense was increased by two levels, to an offense level of 40 because "the offense involved the importation of . . . methamphetamine." U.S. SENT'G GUIDELINES MANUAL § 2D1.1(b)(5). However, only because Petitioner accepted responsibility for her offense by pleading guilty, she was able to decrease her base level by three points to a base offense level of 37, which carries a sentencing range of 210 months to 262 months. U.S. SENT'G GUIDELINES MANUAL § 3E1.1. Had Petitioner been convicted instead of pleading guilty and accepting responsibility, she would have been facing a sentence of 293 months to life in prison. Thus, Petitioner's sentence of 120 months was not only well below the sentencing guidelines but was greatly reduced due to the fact she pled guilty.

Most importantly, Petitioner was charged with violation of 21 U.S.C. §§ 952 and 960. Section 960 provides that where "[a]ny person who . . . knowingly or intentionally imports or exports a controlled substance . . . . 50 grams or more of methamphetamine," that "person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years and not more than life." 21 U.S.C. § 960(a)-(b). Thus, even though Petitioner accuses Mr. DePento of failing "to prevent an improper upward adjustment," the Court finds the statement to be an impossibility. In fact, there was no upward adjustment to prevent because Mr. DePento secured the lowest possible sentence for Petitioner. Petitioner also accuses Mr. DePento of "failing to secure a favorable adjustment." However, the Court finds that to the contrary, Mr. DePento secured Petitioner the most favorable adjustment possible. Thus, her claims of ineffective assistance for failure to perform an essential duty neither show (1) deficient performance nor (2) prejudice. Nothing Mr. DePento could have done could have secured a more favorable outcome than the outcome Petitioner already received.

### 2. *Alleged Failure to Present All Evidence and Options to Petitioner*

Petitioner also claims Mr. DePento "did not present the discovery to the defendant so that the defendant could make a consious [sic] decision on the evidence against her in order for her to decide if she should present her case to trial." ECF No. 49 at 6. Instead, Petitioner alleges that she "was told only to sign the plea presented to her and that no other

choice was available to her." *Id.* at 6.  The Government responds that Petitioner "was specifically advised of her right to go to trial and declined asking any questions regarding her plea colloquy or at the time of sentencing."  ECF No. 53 at 2:10-12.

The gyst of Petitioner's claim here seems to be that her decision to plead guilty was not knowingly made because she did not have all of the evidence before her in order to properly decide if she wanted to take her case to trial.  With respect to this claim, the Court is cognizant of the fact that because it pertains to the negotiation of the Plea Agreement, it represents the sole claim not barred due to procedural default.  *Washington*, 422 F.3d at 870.  "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process."  *Tollett*, 411 U.S. at 267.  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Id.*  The Court interprets this to mean that where a defendant admits guilt in open court, she may not raise a deprivation of constitutions rights, including the Sixth Amendment right to counsel, that occurred prior to the entry of the guilty plea.  Instead, a defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within . . . [reasonable professional] standards."  *Id.*   Here, the Court notes that Petitioner does not allege her guilty plea was not voluntary, and as previously noted, ample evidence confirms her plea was, in fact, voluntary.  Again, her allegations imply her claim arises out of an allegation that her counsel's advice to her regarding entering a guilty plea was not within the reasonable professional standards.  This Court, however, finds that even though there is no indication in the record that Mr. DePento explicitly recommended to Petitioner to plead guilty, even if he had, that would have been within reasonable professional standards for the reasons outlined in the preceding section.

More importantly, Mr. DePento's declaration indicates that he did present Petitioner with all of the evidence in her case.  He stated that he (1) "reviewed all of the evidence provided by the United States and from her former lawyer in discovery so that I could

properly evaluate the merits of the case and determine whether any motions should be filed," ECF No. 55-1 at 2, ¶ 5, (2) "reviewed all of the evidence with her prior *to* her decision *to* plead guilty in this case by reading and reviewing all of the reports that pertained to her and her activities, *id.* at 2, ¶ 7; (3) arranged a meeting on April 10, 2018 between Petitioner, himself, and counsel for the Government and agents, "so that counsel for the United States could review the evidence with Ms. Castro," *id.* at 2, ¶ 8; (4) "discussed all of Ms. Castro's options" with her, explaining "that she could go to trial, plead guilty without a plea agreement or plead guilty with a plea agreement," *id.* at 3, ¶ 12; and (6) "did not tell her that signing the plea agreement was her only option and that no other choice was available to her," but instead, "explained to her that ultimately the decision of whether to plead guilty or go to trial was hers and that [he] . . . would represent her regardless of her decision," *id.* at 4, ¶ 15.  Mr. DePento even elaborated, stating that he explained to Petitioner that if she (1) "went to trial, the United States would likely file an information pursuant to 21 U.S.C. § 851 that would increase the applicable mandatory minimum for her case to 240 months' custody," (2) "pleaded guilty without a plea agreement, the United States would be free to recommend any sentence, including one within the guideline range referenced above," and (3) "plead guilty pursuant to the plea agreement . . . [it] would bind the United States to a sentencing recommendation of 120 months' custody."  ECF No. 55-1 at 3, ¶ 12.  In the end, Mr. DePento states that "[t]he decision to not go to trial was hers and she realized we had no witnesses other than herself." *Id.* at 4, ¶ 16.  The record in this case indicates that Mr. DePento, contrary to Petitioner's claims, presented Petitioner will all of the evidence in this case, including during meetings with the Government, and as such, she had all the information she could need in order to decide whether to try her case.  Petitioner also fails to point to a single piece of discovery or evidence, which had she had access to it, would have caused her to decide to try her case rather than plead guilty.  Thus, she cannot show how even if Mr. DePento had failed to provide Petitioner with some piece of discovery, that failure would have changed the

-20-

outcome for Petitioner (e.g., she would not have pled guilty).  Accordingly, this claim also fails to show (1) deficient performance by Mr. DePento or (2) prejudice.

### 3.   *Alleged Failure to Suppress Evidence*

Petitioner complains that Mr. DePento failed to object or argue "to surpress [sic] "the defendant's evidence," but "[c]ertain evidence presented by the Government could have been excluded [sic] and the result of the defendant's case may have been different." ECF No. 49 at 8.  The Government responds that Petitioner "fails to identify what piece of evidence she believes that her counsel should have moved to suppress."  ECF No. 53 at 2:12-13.  Further, Mr. DePento's declaration indicates that he (1) "reviewed all of the evidence provided by the United States and from her former lawyer in discovery," so that he "could properly evaluate the merits of the case and determine whether any motions should be filed," ECF No. 55-1 at 2, ¶ 5, and (2) despite reviewing all of the evidence, "did not identify any motions that could be filed related *to* the evidence, including any motions *to* suppress or otherwise exclude any of the evidence," *id.* at 2, ¶ 6.  Here, the Court agrees with the Government that Petitioner's claim fails in light of the fact that she fails to specify a single piece of evidence that (1) the Government intended to introduce and Mr. DePento could have sought to ***appropriately***[6] exclude under the law and/or (2) might have changed the outcome of Petitioner's case had she proceeded to trial because it would have been

---

[6]      Rule 11 of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a . . . written motion, . . . an attorney . . . certifies that . . . . the . . . legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Thus, it would have been improper for Mr. DePento to file a motion to suppress for the sole purpose of trying to exclude evidence harmful to Petitioner.  It would only have been proper for Mr. DePento to file such a motion where he believed it was warranted under the law.  Here, Mr. DePento concluded, in his discretion, that such a motion was not warranted.  ECF No. 55-1 at 2, ¶ 6.  Given "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689-90, the Court presumes that Mr. DePento's evaluation was reasonable under the circumstances, particularly given Petitioner has failed to provide any evidence otherwise—such as by directing the Court's attention to some large piece of exculpatory evidence.

excluded.  Accordingly, any alleged failure to suppress evidence on Petitioner's behalf was not unreasonable and did not constitute ineffective assistance of counsel.

### 4.    *Alleged Failure to Advise Petitioner of Her Rights to an Appeal*

Finally, Petitioner claims that Mr. DePento violated her Sixth Amendment rights because he "did not advise the defendant of her rights to an appeal," but instead, "told the defendant that she did not have any rights to an appeal because she signed a plea agreement." ECF No. 49 at 9.  The Government responds that "the plea agreement clearly listed the constitutional rights that Castro would be giving up by deciding to plead guilty," and Petitioner "agreed to waive appeal in exchange for a plea agreement in this case." ECF No. 53 at 2:13-14, 5:5-6.

The record indicates that on April 16, 2018, Movant entered into a plea agreement with the government, in which she waived "all rights to appeal and to collaterally attack every aspect of the conviction and sentence." Plea Agreement, ECF No. 29 at 9.  The plea agreement contained exceptions, which allowed her to appeal (1) "a custodial sentence above the greater of 71 months or the mandatory minimum term, if applicable" or (2) "the conviction or sentence on the basis that defendant received ineffective assistance of counsel." *Id.* at 9-10.  Defendant was informed on at least three occasions that by entering into the plea agreement, she waived her right to appeal or collaterally attack her sentence except for where (1) the sentence exceeds the greater of the mandatory minimum sentence or (2) she sought to attack the sentence on the basis of ineffective assistance of counsel. *Id.* at 9 (showing that on April 16, 2018, Movant entered into a plea agreement with the government, in which she waived "all rights to appeal and to collaterally attack every aspect of the conviction and sentence"); Plea Colloquy, ECF No. 52 at 6:17-7:6 (Petitioner confirmed she understood when Magistrate Judge Crawford also informed Petitioner "You have the right to appeal any sentence that might be imposed on you unless you've given up that right as part of your plea arrangement with the Government"); Sentencing Hearing, ECF No. 51 at 8:6-11 (Mr. DePento responded, "Yes," on Petitioner's behalf when the Court asked Petitioner directly, "Do you acknowledge you waived your right to appeal and

collaterally attack"). This evidence entirely contradicts any statement by Petitioner that she was (1) unaware of her right to an appeal and/or (2) not informed that by entering into the plea agreement, she would sacrifice her right to appeal or collaterally attack the sentence.

Further, in Mr. DePento's declaration, he states that as part of his representation, he (1) discussed with Petitioner that if she signed the plea agreement, "she would be waiving her right to appeal or collaterally attack the conviction or the sentence in exchange for a more favorable sentencing recommendation from the United States," ECF No. 55-1 at 3, ¶ 13; (2) explained to Petitioner "that she would only be permitted to appeal or collaterally attack the conviction and/or her sentence if the Court sentenced her above the statutory mandatory minimum term (120 months' custody) or the basis of her challenge was ineffective assistance of counsel," *id.* at 3, ¶ 13; (3) after he explained the agreement to Petitioner, Petitioner confirmed to him that "she understood and was in complete agreement with waiving her appeal and collateral attack rights in exchange for a lower sentencing recommendation from the United States," *id.* at 3, ¶ 13; (4) was never advised by Petitioner that she wished for him to file a notice of appeal, *id.* at 4, ¶ 17; and (5) would have initially advised against an appeal if Petitioner had asked him for one, but nevertheless, would have filed one on her behalf in a timely manner if she had persisted in her request, *id.* at 4, ¶ 18. Mr. DePento's statements in his declaration are bolstered by the record, and as stated, completely belie Petitioner's claims that she was unaware that by entering into her plea agreement, she was sacrificing her right to appeal. Thus, Petitioner's claim for ineffective assistance of counsel on this basis also fails.

Petitioner concluded by asking the Court to grant "any kind of relief on her sentence," stating that she feels her attorney did not give her the best representation. ECF No. 49 at 13. The Court disagrees with Petitioner's claim that her attorney failed to give her the best representation and views this Motion as an attempt to disingenuously claim ineffective assistance of counsel in the hopes of securing a reduced sentence, resulting in the needless disparagement of Petitioner's hardworking attorney. Moreover, Petitioner

-23-

also stated in her Motion that she would like the Court to lower her sentence based on her criminal history; however, as noted by this Court at the Sentencing Hearing, Petitioner's criminal history was one of the factors that weighed against providing Petitioner a shorter sentence.  Petitioner had stated that if the Court provided Petitioner a shorter sentence, she would seek education and rehabilitation while in prison.  ECF No. 49 at 13.  Even though the Court denies Petitioner's Motion, the Court hopes Petitioner will still pursue her education and rehabilitation.

## V.   CONCLUSION

For the above reasons, the Court **DENIES** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence.

The Court **DENIES** Petitioner's request for an evidentiary hearing because it finds that there is sufficient information on the record to demonstrate that Petitioner (1) is procedurally barred from her Motion as a result of failing to raise the issue on direct appeal and has not shown cause of prejudice to excuse her procedural default; (2) was accurately advised of the consequences of her plea agreement, (3) knew that she was waiving her right to appeal or collaterally attack at the time she entered her plea; and (4) had effective assistance of counsel at the time she entered her plea.

Finally, the Court **DENIES** Petitioner a certificate of appealability.  A defendant is required to obtain a certificate of appealability in order to appeal a decision denying a motion under 28 U.S.C. § 2255.  A court may issue a certificate of appealability where the movant has made a "substantial showing of the denial of a constitutional right," and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further.  *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003).  This Court finds that Movant has not made the necessary showing.  A certificate of appealability is therefore **DENIED.**

**IT IS SO ORDERED.**

DATED:    October 26, 2020

_____

**HON. ROGER T. BENITEZ**
United States District Judge

-24-